January Term, 1861.

Jessup et al.
v.
Stone et al.

April 10.

*Chapman* v *Wadleigh* 33 *Wis.* 268

JESSUP and another vs. STONE and others, impleaded with THE RACINE & MISSISSIPPI RAILROAD COMPANY.

The lien of a mechanic on a building is subordinate to the lien of a mortgage upon the land on which the building is erected, recorded before the building was commenced.

Where the interest which the owner of the building has in the land is that of a mere occupant with a right to remove the building, the right of occupancy and removal would pass by a sale under the mechanic's lien; but if the owner of the building, as between himself and others having rights in the land, would not have the power to remove it, a purchaser under the mechanic's lien would acquire no right to remove it.

APPEAL from the Circuit Court for *Racine* County.

The Racine & Mississippi Railroad Company, on the 1st of January, 1857, executed to the plaintiffs a mortgage upon their railroad and its appurtenances, including the depots, &c., at all places along the line of the road, and the lots of land on which the same were or might be erected, and all the pieces of land which should be used for depots or station purposes, &c. After the mortgage was duly recorded, the appellants, under a contract with the railroad company, commenced the construction of a station building for the company, at Darien, upon ground included in said mortgage, and subsequently purchased the building at a sale upon a judgment establishing their lien upon it for labor and materials furnished by them in its erection. This action was brought to foreclose the mortgage, and the only question was, whether, as to said building, the lien of the mortgage or the lien of the mechanic and material man had priority. The circuit court decided that the lien of the mortgage had preference.

*Winsor & Smith*, for appellants, contended that by the statute (R. S. 1849, chap. 120; R. S. 1858, chap. 153) the building is made *absolutely* subject to the lien of the mechanic or material man, while the land is not, but only the right, title and interest therein of the owner of the building; that the statute deems the person for whom the building is erected its owner, though not the owner of the land, resembling in this respect the lien laws of New York. Crary's N. Y. Prac., 200-1, 248; 5 Seld., 435; 2 E. D. Smith, 681, 662, 543, 548, note; 1 id., 725, 652, note; 1 Duer, 676; 21 Barb., 520; 11 id., 9. 2. In this case the railroad company was the owner and in actual and rightful possession of the land on which the building was erected. 3. The lien of the mortgage did not take effect upon the building until *after* it was commenced. It was no lien upon even the corner stone, until that stone was fully and permanently laid. But a building is *commenced* before the corner stone is laid; before any part of the materials are attached to the realty. It is commenced when the first shovel-full of earth is removed

for the foundation; and before that, if any other act in commencing the building precedes.

*Cary & Pratt*, for respondent, argued that the depot, as fast as erected, became a part of the realty, and could not be separated therefrom and treated as personal property for any purpose whatever. Smith on Real & Personal Prop., 16 Law Lib., 6th Series, 1, 2; 2 Kent's Comm., 401; 2 Blacks. Comm., 16, 17. It became subject, therefore, to the lien of the mortgage, as fast as erected; and in determining the priority of liens thereon, the same rule must govern as to the building as would apply to the land without the building. It is an accession to the mortgaged estate, and inseparable from it. *Winslow vs. Merchants' Ins. Co.*, 4 Met., 306; *Butler vs. Page*, 7 id., 40; *Corliss vs. McLagin*, 29 Me., 115; *Snedeker vs. Waring*, 2 Kern., 170; *Franklin vs. Moulton*, 5 Wis., 1; 2 Hill on Mort., 309; *Rees vs. Ludington*, [12 Wis., 277].

*By the Court*, DIXON, C. J. *Rees vs. Ludington* [*ante* p. 277], disposes of this case. It is even much stronger against the appellants than that was against Ludington and others. Here it is understood that the mortgage to the respondents was executed, delivered and recorded prior to the commencement of the building, by virtue of the lien on which the appellants claim title; while in that case the priority of the mortgage was the subject of serious controversy. After a careful consideration of the full and able printed argument presented by the counsel for the appellants, our judgment as to the proper construction of the statute, remains unchanged. The argument drawn from the language of the first section of the act is very forcible, and did not escape our attention on the former occasion; but for the reasons there given, we are still of opinion that it was not the intention of the legislature to give a lien upon the building which should be absolute and independent of that upon the title or interest of the owner in and to the land upon which it is erected. We think it was not the design, as between the building and the owner's right or interest in the soil on which it stands, to create, in favor of mechanics and material men, different and variable degrees of lien, but to make one

entire claim as to both, and that, such as would follow and be governed by his title to the land.   If his interest in the land is that of a mere occupant, having the right to remove whatever buildings he might place upon it, then this right of occupancy and removal would go to the mechanic or those obtaining occupancy under his lien.   But if his interest is something more than that of an occupant or possessor with authority to remove, and such that as between him and the owner of the fee, or others having rights in the land, he would not have this power of removal, then the mechanic, or purchaser under him, would not.   Their title and interest is identical with his, and is subject to all the obligations and disabilities under which his was placed at the time the building was commenced.

In addition to the reasons given in *Rees vs. Ludington,* which are founded solely on the language of the statute, we may say that our views were not a little influenced by a consideration of the almost inextricable difficulties and conflicts which must arise from the general exercise of this power of removal.   The rule is almost universal, that to the owner or person ultimately entitled to the fee, belong all erections and structures of a permanent character, which are annexed to the soil.   As a general principle, the party in, or rightfully entitled to, the possession of the land, cannot be disturbed.   When and how, then, was the purchaser to exercise his right of taking away the building?   And if there were several purchasers under different liens, each claiming an individual interest, how were they to agree upon the course to be pursued?   And in case of contest or disagreement, how were their rights and equities to be adjusted?   Was the building to remain upon the land, an annoyance to the owner, until their disputes could be settled in a court of equity or elsewhere, and perhaps a re-sale ordered?   These and other like difficulties suggested themselves to our minds. They were all matters for which the legislature had made no provision.   In Pennsylvania, where, at one time, an act was so construed as to make the building the debtor, and to give the mechanic an absolute lien upon it, these difficulties were so great as to induce the courts to hold that a sale under it

carried to the purchaser not only a right to the building but also an absolute estate of inheritance in so much of the land on which it was situated as was necessary to a proper enjoyment of it. And this was done without regard to the title or interest of the owner, or party for whom the building was erected. A sale in a proceeding against a building erected by an equitable vendee who had not paid the purchase money, was held to have divested the legal title of the vendor. 7 Watts, 9. The sale of a house erected by a tenant for years, carried with it the fee of the lessor. 9 id., 52. It cut off the estate of remainder men and reversioners. 2 Rawle, 343 ; 4 W. & S., 223. The injustice which was thus worked out, notwithstanding the arguments of those courts to the contrary, was very apparent, and such as to induce a legislative modification of the law, so that the lien of of the mechanic or material man should not extend to any other or greater estate than that of the person in possession. 9 W. & S., 119.

Again, there are many instances where, if a removal were allowed, the buildings are so constructed that they cannot be taken away without occasioning permanent loss and injury to the freeholder. In such a case, is the innocent owner of the fee to submit to it without a compensation ? And if not, how is he to be made whole, when the damages are caused by the strict prosecution of another's legal right ? There would be many cases too, where the exercise of such a right would be wholly impracticable as well as useless to the party possessing it. There are many buildings, the material and fabric of which are such, that to remove them is to convert them into a broken and worthless mass of ruins and fragments. We cannot believe that the legislature intended to provide a remedy, the pursuit of which must, in so many cases, result in the almost total destruction of the thing sought.

But conceding counsel to be correct in saying that the lien on the building is absolute, still we do not think that the position that it is prior to that of a previously existing incumbrance upon the land can be maintained. At best it can only be said to attach at the same point of time with

January Term,
1861.

JESSUP et al.
v.
STONE et al.

that of the mortgage, and not before it.    It is a lien upon the building, and not upon the materials prepared and ready for its construction, and hence it cannot exist by virtue of the statute, until the building is commenced and some parts of the materials transferred to and permanently made a part of it.    The commencement undoubtedly takes place with the establishment of its foundations.    But whenever this is done and any part of the material put in its place so as to constitute a portion of the building, it at the same moment of time becomes a part of the realty, and the lien of the mortgage at once attaches.    So that the most that can be claimed is, that both liens become operative at one and the same moment, and that in point of time neither has precedence of the other.    This being the case at the laying of the "corner stone," the same continues during the entire progress of the structure, and at no time can the lien of the mechanic be said to reach back and cut off that of a prior mortgage or other previous incumbrance.    The language of the act is, that the building and the land on which it is situated shall be subject to the payment of debts to mechanics and material-men, "before any other lien which originated *subsequent* to the commencement of such house or building." It clearly cannot be so construed as to displace and postpone liens which are contemporaneous and not subsequent.

But more than all this, it may well be doubted whether the words "which originated subsequent to the commencement of such house or other building," were intended to apply to any but liens which are actually created by act of parties after the building is in fact commenced ; and whether a previously executed mortgage, or other prior lien, is within their operation.    We think it is not, and for that reason the statutory lien cannot be preferred.

The judgment of the circuit court must be affirmed.