33 267<br>91 615

CHAPMAN and another vs. WADLEIGH and others.

LIEN FOR BUILDING MATERIALS: (1) *As against purchaser — Enlargement of contract.* (2) *As against mortgagee.* (3) *When lien attaches, as against other lienholders.* (4) *Same, where materials used on different lots.*

1. In the fall of 1867, plaintiffs contracted with W. to furnish lumber for the erection of a new dwelling house, and the repair of an old one, on a lot belonging to W.; and they commenced furnishing lumber for that purpose the same season, and continued doing so until the last day of 1868. In August, 1868, W. became owner of a second lot immediately adjoining that first mentioned, and removed the old house upon it, and made the repairs on said house in the spring of 1869. In that spring, also, the contract for lumber was *enlarged*, by plaintiffs agreeing to furnish lumber to build *a barn* on the first mentioned lot, which they did during that spring and summer. *Held*, that for the purpose of determining the rights of plaintiffs *as against* W. under the lien law, the lumber furnished for all the buildings, including the barn, may properly be considered as furnished *under a single contract*, and the petition for a lien having been filed within six months, and this action commenced within one year, from the last delivery of lumber under such contract, plaintiffs have a lien, *as against W.*, *upon both lots*, for the unpaid balance of their account for such lumber.

2. B. held unpaid *mortgages* of various dates from May, 1867, to November, 1870, some on one of said lots of W., some on the other, and some on *both.* The question being as to priorities of lien between plaintiffs and B.: *Held,* that B. took each of said mortgages subject only to conditions *then existing,* and cannot be prejudiced by any subsequent modifications of the original contract between plaintiffs and W.

3. The attaching *to* the realty of any material used in constructing a building or in making repairs, is the *commencement* of such building or repairs, within the meaning of the lien law. *Jessup v. Stone,* 13 Wis., 466.

4. As between plaintiffs and the mortgagee, the lien of the former on each lot dates only from the commencement of the work thereon; and the increased lien, to include the value of the lumber furnished for the barn, dates only from the commencement of the barn.

APPEAL from the Circuit Court for *Winnebago* County.

This action was commenced on the 7th of February, 1870, to enforce a lien upon certain premises for the price of lumber furnished by the plaintiffs and used in the erection and repair of certain buildings thereon. The pleadings and evidence show the following facts:

1. In the fall of 1867, the plaintiffs, who were then partners and lumber merchants in the city of Oshkosh, contracted with the defendant *Caroline Wadleigh* (through her husband and agent, the defendant *J. C. Wadleigh*) to furnish lumber on credit, for the erection of a new two-story dwelling house and the necessary outbuildings (but not including a barn) on a lot in said city of which she became the owner October 19, 1867; and also to furnish lumber with which to enlarge and repair a small frame dwelling house then standing upon said lot, and then or soon after occupied by the defendants *Wadleigh* as their residence. The plaintiffs commenced furnishing lumber on such contract immediately after *Mrs. Wadleigh* became the owner of the lot. The doors and sash for the new house were procured during the following winter; the excavation for the foundation thereof was commenced early in the spring of 1868, as soon as the frost was out of the ground (the precise time does not appear); the foundation was erected during that

spring; and the house was completed ready for occupancy in the spring of 1869. The date of the last item of lumber furnished by the plaintiffs, and used in the new house, is December, 31, 1868, and there remains unpaid a balance of $225.99 on account of lumber furnished therefor by the plaintiffs.

2. On the 11th day of August, 1868, *Mrs. Wadleigh* became the owner of another lot adjoining the one above mentioned, on the south, which for convenience is termed the "south lot," the former being known as the "north lot." The two lots contain less than one acre of land, and until the fall of 1868 were in the same enclosure. Soon after *Mrs. Wadleigh* became the owner of the "south lot," the small dwelling house above mentioned was moved on it from the other lot, and continued to be occupied by the defendants *Wadleigh* as their residence until after this action was commenced. No repairs were made on the small dwelling house until the spring of 1869. It was then repaired, and the plaintiffs furnished lumber which was used for that purpose, of the value of $51.85.

3. In the spring of 1869, the original contract for lumber was so far modified and enlarged by the parties thereto, that the plaintiffs further agreed to furnish, and did furnish, sufficient lumber to build a barn on the "north lot." The barn was commenced in April or May, 1869, and the value of the materials furnished therefor by the plaintiffs is $116.97. The last lumber for the barn was furnished July 9, 1869.

4. The defendant *Bouck* is the owner of six mortgages on one or both of said lots, as follows: One on "*south lot*" for $200, dated and recorded May 21, 1867; another on "*north lot*" for $350, dated and recorded March 4, 1868; another for $650, dated May 21, and recorded May 22, 1868, on "*north lot*;" one for $418 on *both lots*, dated and recorded August 11, 1868; another on *both lots* for $850, dated August 5, and recorded August 6, 1869; and another for $167, dated February 15, 1869, and recorded November 23, 1870. The

debts secured by these mortgages are all upon ten per cent. interest, and no payments have been made on account of such debts or interest, except that the interest to May 21, 1869, has been paid upon that which is secured by the mortgage dated May 21, 1867.   The mortgage for $418 was given to secure a loan to *Mrs. Wadleigh* of money which was used by her to pay for the "south lot," and she purchased that lot subject to the mortgage for $200 first above mentioned.

5. The last lumber furnished by the plaintiffs pursuant to their contract with *Mrs. Wadleigh* was furnished December 27, 1869 ; and the same was used in repairing the small house on the "south lot." The plaintiffs' account for lumber furnished under such contract consists of numerous items and dates from October 19, 1867, to the 27th of December, 1869. The plaintiffs duly filed their petition for a lien on both lots on the 4th day of February, 1870.

6. The case was tried by a referee, who found that, as to the lumber used in the new house and in the barn (both on the "north lot"), the petition for the lien was not filed in time; and that as to the lumber used in repairing the small house (amounting to $51.85), the plaintiffs were entitled to a lien on the "south lot" therefor, but subject to two mortgages for $200 and $418, respectively.

7. On exceptions to the report of the referee, the circuit court modified the same so as to give the plaintiffs a lien for the whole unpaid balance of their lumber bill on both lots, and subject only to the mortgage of May 21, 1867, for $200 on the "south lot." The time when the buildings for which the lumber was furnished were commenced, was determined by the circuit court to have been October 19, 1867, and all of the mortgages, except the one last above mentioned, were held to be subordinate to the lien of the plaintiffs.

Judgment having been entered in accordance with such modified report, the defendants *Mrs. Wadleigh* and *Bouck* appealed therefrom.

*Gabe Bouck,* for appellants, to the point that the provision of the statute (2 Tay. Stats., 1764, § 6) which requires the petition for a lien to be filed " within six months from the date of the last charge for work and labor performed, or materials furnished," must be understood as referring to the last charge of *each separate contract,* or job, or bill of materials, cited *Fowler v. Bailey,* 14 Wis., 125 ; *Spencer v. Barnett,* 35 N. Y., 94; *Choteau v. Thompson,* 2 Ohio St., 125 ; *Phillips v. Duncan,* 12 Leg. Int., 5; *Neil v. Flanigan,* id., 6 ; *Livermore v. Wright,* 33 Mo., 31 ; *Yearsley v. Flanigan,* 22 Pa. St., 489. As to the filing of a lien claim upon separate buildings, and upon distinct lots, without apportioning the claim and designating the amount claimed on each, he cited *Morris County Bank v. Rockaway Manufacturing Co.,* 1 Green (N. J.), 150.

*Felker & Weisbrod,* for respondents, contended upon the evidence, 1. That the original contract on the part of the plaintiffs was to supply lumber for building a new house, repairing the old one, and building out-buildings. 2. That the materials were all furnished under the original contract, and the account of plaintiffs was a running account under the same, and therefore they were entitled to file the claim of a lien for the whole amount within six months after the last item therein. 14 Wis., 125–131, and cases there cited ; 2 Ohio St., 114; *Merchand & Co. v. Cook,* 4 G. Greene, 115, 116 ; *Livermore v. Wright,* 33 Mo., 32 ; *Hill v. Milligan,* 38 Pa. St., 237. 3. That as the account was an open running account, and the materials all furnished under the one contract, and all furnished generally for building houses, and no particular item furnished for any particular building, the premises were chargeable as a whole for the full amount due. 4. As to the time when a lien for materials attaches, they contended that it is not necessarily when the *foundation* of the house is commenced (13 Wis., 466), but rather, in the case of a *wooden* house especially, when the party erecting the house begins to work upon such materials *on the premises.* It is a question of

fact in each case, when a house is actually commenced.    12 Iowa, 119–121 ; 11 id., 520–523 ; 2 Ohio St., 144 ; Houck on Liens, 141, § 15.

LYON, J.   We find no difficulty in holding with the circuit court, that, as between the plaintiffs and *Mrs. Wadleigh*, all of the lumber furnished by the former to the latter, whether for the new house, the outbuildings, the barn or the small house — whether used upon the "north lot" or the "south lot,"— was furnished under a single contract ; that is, under the contract made in the fall of 1867, as modified or enlarged by including in it the lumber for the barn, in the spring of 1869.   The lumber having been delivered at different times, but all in pursuance of one contract, and the petition for the lien having been filed in the proper office within six months, and this action commenced within one year, from the date of the last delivery of lumber in execution of such contract, there can be no doubt of the right of the plaintiffs to a judgment giving them a specific lien upon, and subjecting the right, title and interest of *Mrs. Wadleigh*, in both lots, to the payment of the unpaid balance of the price or value of such lumber, before any other lien on such lots which originated subsequently to the commencement of such house, buildings or repairs.   Tay. Stats., 1762, § 1, and 1764, § 6 ; *Fowler v. Bailey*, 14 Wis., 125.

But we are called upon to determine the respective rights of the plaintiffs and the defendant *Bouck*, the mortgagee, in the premises affected by these proceedings.

It is clear that the mortgagee can not be prejudiced by any change or modification of the original contract between the plaintiffs and *Mrs. Wadleigh*.   He took each mortgage subject only to existing conditions, and it was not competent for other parties to do any act which would operate retrospectively to his injury.   Hence, while the whole lien of the plaintiffs, on both lots (as between them and *Mrs. Wadleigh*), dates from the commencement of the new house on the "north lot," as be-

tween the plaintiffs and the mortgagee, the lien on each lot can only date from the commencement of the work thereon, and the increased lien by reason of the change of the contract to include the barn lumber, can only date from the commencement of the barn in the spring of 1869.

By adopting and applying these principles, the plaintiffs' right to a lien is saved, and at the same time the rights of the mortgagee are fully protected.

It may be observed here, that the attaching to the realty of any material used in constructing a new building, or in making repairs, is the *commencement.* of such building or repairs within the meaning of the statute. It was so held in *Jessup v. Stone,* 13 Wis., 466. This rule is reasonable and just, in that it requires an open, visible act to fix and establish the precise time when the mechanic or material man shall have priority of lien over subsequent incumbrancers. Under this rule a person about to take a mortgage upon real estate may determine with absolute certainty, by an examination of the premises, whether his security is liable to be, or can be, impaired by liens of mechanics or material men under the statute. Any other rule might work great wrong and injustice. The person furnishing materials can always protect himself by stipulating for, and insisting upon, an early commencement of the work, thus securing the priority of his lien, should he be compelled to resort to that remedy to obtain payment for such materials.

The precise time when the new house was commenced is left somewhat uncertain by the testimony; but it was probably in the early part of May, 1868. The repairs on the small house and the building of the barn were commenced in the spring of 1869.

By applying the principles above stated to the facts of this case, we find that the relative rights of the plaintiffs and the mortgagee in and to the lots in question, are as follows:

1. As to the "south lot," the mortgages of May 21, 1867, and August 1, 1868, have priority over the whole of the

plaintiffs' lien, and such lien has priority over all of the other mortgages.

2. As to the "north lot," the mortgage of March 4, 1868, is prior to any lien of the plaintiffs; $225.99 of such lien, and interest thereon from the commencement of the action, has priority over all the other mortgages on such lot. The mortgage of May 21, 1868, takes precedence of the balance of the plaintiffs' lien.

3. The mortgages recorded August 6, 1869, and November 23, 1870, are subordinate to the whole amount of the plaintiffs' lien.

It follows that the judgment must be reversed, and the cause remanded, with directions to the circuit court to render a judgment in accordance with this opinion.

*By the Court.* — So ordered.