PRINCE and another, Trustees, Respondents, vs. C. G. BRET-
TING MANUFACTURING COMPANY, imp., Appellant.

*January 12—February 10, 1931.*

For the appellant there was a brief by *Walsh & Morris* of
Washburn, attorneys, and *William F. Morris* of De Pere
of counsel, and oral argument by *William F. Morris* and
*Charles F. Morris.*

For the respondents there was a brief by *L. A. Lamoreux,* attorney, and *Lamoreux & Cate* of counsel, all of Ashland, and oral argument by *C. A. Lamoreux.*

FRITZ, J.  The defendant Clubine Company was the owner of the land and buildings which are subject to the liens involved in this action.  In August, 1926, the Clubine Company commenced the reconstruction and repair of the buildings and the equipment thereof as a sawmill.  For that purpose it purchased new and second-hand machinery and apparatus from various parties, and had its employees attend to the permanent installation thereof, so as to become part of its premises.  The construction and repair of the sawmill continued and was not completed so as to enable the operation of the plant as a sawmill until the winter of 1927.  While that reconstruction, repair, and installation was under way and still uncompleted, the plaintiffs' mortgage was executed by the Clubine Company on March 15, 1927, and recorded on March 21, 1927.

There is no dispute as to the validity of plaintiffs' mortgage.  The sole question on this appeal is whether the judgment erroneously limits the amount of the Bretting Company's lien to $2,029.67 and erroneously subordinates that lien to the lien of plaintiffs' mortgage.  The Bretting Company's claim for lien was filed on November 11, 1927, for labor, machinery, and materials, amounting to $5,894.63, which it furnished to the Clubine Company.

The Bretting Company was engaged in operating a machine shop and in manufacturing, selling, and repairing sawmill machinery.  The items in question were for labor performed and materials furnished from time to time between September 30, 1926, and August 22, 1927.  As to those items the manager of the Bretting Company testified: "These items were ordered sometimes by Clubine coming to the shop, sometimes my going to his plant, sometimes by tele-

phone, and sometimes by his men coming for them. . . . . There never was any list of stuff he would want of us. As he wanted stuff he would call on us. He talked about some of it before he ordered it." It is apparent from the record that the Clubine Company only ascertained what was needed to replace or repair missing or defective parts of the second-hand machinery which it was installing, as its men were proceeding with that installation; and that as that work proceeded, and it was discovered from time to time that repairs or replacement of defective parts became necessary on the machinery or apparatus which the Clubine Company was installing, it ordered the Bretting Company to make the repairs or replace the defective or missing parts. However, the Bretting Company had no contract to furnish all of such labor, repairs, and replacements, and some of such replacements and repairs were furnished by other parties.

It is the contention of the Bretting Company that the materials and services which it furnished between September 30, 1926, and August 22, 1927, amounting to $5,894.63, were furnished by it under a continuing contract, or at least under such circumstances that there was substantially but one transaction as to all items so furnished during that period. On that subject the trial court said:

"I am unable to conclude from the evidence, however, that there was any contract entered into by the parties to furnish material and services from the beginning and running through the period that the Bretting Company furnished such material and services to the Clubine Company, but that the Clubine Company ordered from the Bretting Company material, supplies, machines, and services from time to time."

And the court found that the work and materials were not furnished by the Bretting Company "under a continuing contract, but were furnished from time to time as requested by the" Clubine Company.

The court rightly found that there was no entire contract for the furnishing of the several items of labor and materials, and that the items for which a lien is claimed were not furnished with such continuity as to constitute substantially one transaction. As that finding is not contrary to the evidence or the evidentiary inferences which can properly be drawn therefrom, it cannot be set aside on appeal. Upon that state of facts the court rightly concluded that the Bretting Company was only entitled to a lien for such lienable items as were furnished within the period of six months (prescribed by sec. 289.06, Stats.) prior to the filing of its claim for lien on November 11, 1927.

"Where there are several items of account for goods sold at different times, there must be either an express contract, or the circumstances must be such as to raise an implied contract embracing all the items, so as to make them single or entire. *Secor v. Sturgis,* 16 N. Y. 548. There was here no such express contract, and no implied contract embracing all the items. . . . Where a party furnishes materials for a building at different times, in order to have a lien for the whole amount furnished, and that a lien might be filed one year after the date of the last charge, it was held such materials must have been furnished under *one* contract." *Brown v. Edward P. Allis Co.* 98 Wis. 120, 125, 73 N. W. 656.

Independent transactions which are not connected with or part of prior transactions can have no influence in the way of extending the time in which a claim for lien must be filed under sec. 289.06, Stats. As there was no such connection between the various items furnished by the Bretting Company as to *constitute substantially one transaction,* the six-months period for filing its claim for lien began to run as to each item on the day it was furnished. Consequently, it was not error to limit the lien of the Bretting Company to the items which were furnished within the period of six months prior to filing lien on November 11, 1927, and which amounted to $2,029.67.

However, although those items totaling $2,029.67 were furnished as independent transactions, all were furnished in the construction, equipment, and repair of the sawmill. Such construction and repairs were commenced prior to the recording of plaintiffs' mortgage on March 21, 1927, and were then still under way and uncompleted (as was readily observable upon inspection by any one concerned) until the winter of 1927. The dry kiln, for instance, although contracted for in August, 1926, was not installed until April 15, 1927; and the "Hog" for permanent installation was not delivered by the Diamond Iron Works until December, 1927. That being true, Bretting Company's lien for work and materials used to complete such construction and repairs is entitled to priority to any lien, such as plaintiffs' mortgage, which originated subsequent to the commencement of the construction or repairs of the sawmill. Sec. 289.01, Stats., expressly provides that—

"Such lien shall be prior to any other lien which originates subsequent to the commencement of the construction or repairs . . . of the . . . building, machinery, structure or work."

Consequently, the Bretting Company's lien rights are referable back for lien purposes to the time of the commencement of the work of construction and repair, instead of dating merely from the time the work or materials were furnished by the Bretting Company.

In *Vilas v. McDonough Mfg. Co.* 91 Wis. 607, 613, 65 N. W. 488, this court said, in relation to the priority of lien rights of a manufacturer of machinery which was delivered for installation in a mill subsequent to the recording of a mortgage on the mill, which was in an unfinished state, and substantially without machinery when the mortgage loan was made, to wit:

"The appellant's lien, being upon the building itself, is prior and paramount to any other lien which has originated

subsequently to the commencement of the construction of the mill, by express provision of the statute itself. It is prior and paramount to the plaintiff's mortgage, which was executed since the commencement of the building. The fact that the plaintiff had not begun to furnish the machinery for which his lien is claimed, at the mill, at the time when the plaintiff made his loan and took his mortgage, is irrelevant to the question. This was so decided in *Lampson v. Bowen,* 41 Wis. 484. . . . The condition of the building, its unfinished state, was notice to the plaintiff, within the contemplation of the law, that further expenses for the completion of the building for its original purpose as a mill were in contemplation, which in some contingency, not remotely likely to happen, might eventuate in a lien which would be prior and paramount to the lien of his mortgage. *Chapman v. Wadleigh,* 33 Wis. 267."

To the same effect, see *Evans-Lee Co. v. Hoton,* 190 Wis. 207, 213, 208 N. W. 872, and cases there cited.

It follows that the Bretting Company's lien for $2,029.67 was prior to the lien of plaintiffs' mortgage, and that the judgment must be modified accordingly.

*By the Court.*—Judgment modified as directed in the foregoing opinion.