LEVI G. TODD ET AL., APPELLEES, V. CASS COUNTY
ET AL., APPELLANT.

[FILED JANUARY 13, 1891.]

1. **Elections:** CONTEST. A party in contesting an election set
forth in his petition the names of 161 persons whom it was al-
leged were illegal voters, and who voted in favor of the proposi-
tion contested. Also that a considerable number of illegal votes
were cast by persons whose names were unknown to the plaint-
iffs. To sustain these allegations the proof failed to show that
the persons objected to did not reside within the city, and in the
ward in which the returns showed that they had voted. *Held*,
The proof was insufficient to show that fraudulent or illegal
votes were cast.

2. ———: ———: PROOF OF ILLEGAL VOTING. One of the modes
of proving that illegal or fraudulent votes were cast in a ward
of a city or other subdivision is to call a resident on one of the
blocks in said ward and prove by him who were residents and
voters residing on the lot on which he resides. If he is ac-
quainted with all the residents and voters on such or other
blocks, he may testify thereto. Otherwise witnesses from the
several houses, lots, or blocks must be called to show who are
occupants and voters in the several buildings on said block or
blocks at the time of the election. The proof may be extended
in this manner over the disputed territory, and the fraudulent
names deducted from the whole vote cast in such ward or other
division.

3. ———: ———: ———. Where it is sought to have an election
declared fraudulent because the votes cast are grossly in excess
of those cast at previous and succeeding elections, the proof
should show the number of votes cast at at least two general
elections preceding, as well as those cast at the elections follow-
ing, together with any explanation tending to show the cause, or
the want of it, for the increase, and if fraud is clearly established
in the excessive votes the court may reduce the vote to the aver-
age number theretofore cast, or in case of gross fraud reject it
altogether.

4. ———: ———: CASE STATED. An election was held in the
county of C. to issue the bonds of the county, at which the city
cf P. cast more than 2,200 votes. The election was held in

June, 1889, and to prove that the election was fraudulent the contestant introduced the number of votes cast at the city election in said city in the spring of 1889, and also at the election in November, 1889, being about 1,300 votes; but did not introduce the number of votes cast at the general election in 1888, nor at the general election in 1887. The court found the number of legal voters in the city at the time of the bond election to be 1,928. *Held*, That without proof that the votes cast at the general elections of 1888 and 1887 were greatly less than the number of votes cast at the bond election, the court could not reject votes at the latter election as being excessive and therefore fraudulent and unknown voters.

MOTION for rehearing of case reported 30 Neb., 823.

*Webster & Holmes*, and *E. H. Wooley*, for the motion, cited: *Brown v. Herr*, 21 Neb., 128; *Tootle v. Dunn*, 6 Id., 100; Maxwell, Crim. Proc., 66; *Cook v. Pickrel*, 20 Neb., 434.

MAXWELL, J.

A motion for a rehearing has been filed in this case, and after careful re-examination of the facts we are convinced that our former decision is right, and that the proof fails to show, with that degree of certainty required by law, fraud in the election sufficient to change the result, and therefore that the court below erred in annulling the election.

The attorneys for the appellees, however, seem to labor under the impression that the court had decided that in all cases it was necessary to identify by name the persons who voted fraudulently, and that an election could not be annulled unless all the fraudulent votes were distinctly pointed out. These questions were not presented in such form that they controlled in this case for the following reasons: The action was brought upon the theory that certain persons named had cast illegal votes in the city of Plattsmouth, or that illegal votes had been cast in the names of such persons.

There was also an allegation that a certain number of illegal votes were cast, the names of the voters being unknown to the appellees. The court held that in a case of this kind the illegal voters must be pointed out, and if not known at the commencement of the action, the names should be inserted in the petition by leave of court when ascertained. To prove that certain illegal votes were cast in four of the wards of said city, four witnesses were called from each ward, who testified in substance that while they had a general acquaintance in their own wards and in the city, yet that of certain of the persons returned as having voted therein they had neither knowledge nor acquaintance. There was no attempt to take the city in detail and prove who resided on certain lots and blocks therein and so cover the whole city with proof. We must presume this kind of proof was not desired as it was not resorted to.

The testimony shows that the average number of votes cast at the election in question in each of the First, Second, Third, and Fourth wards was about 500. Now, no one will contend that any person residing in any ward or precinct of a growing western town or city is acquainted with and can call by name one-half or one-third even of the inhabitants therein, where they number several hundred. This is true of a resident of a ward, and was doubly applicable in the case at bar where a large number of new railway employes had but a few months before come into the city. One of the modes of proof in a case of that kind is to call a resident on a certain block in the city who is acquainted with the residents on such block, and require him to testify as to the people residing thereon. If he is not acquainted with all the persons residing on the block he probably is with those residing on the lot on which he resides, and perhaps those on the adjoining lots. These persons he will name, and other witnesses residing upon other lots in the same block must be called until all the persons residing on said block

at the time of the election are proved.  The proof as to other'blocks is to be taken in the same way.   In a thickly settled portion of the city it may be necessary to call a wit- ness from each house, while in a sparsely settled portion thereof a witness may be able to testify as to the voters in said ward, or at least in several blocks thereof.   Nothing of this kind was attempted, hence all that the proof estab- lished was a mere suspicion, and was therefore wholly in- adequate.

Second—But it is said in effect that the unknown illegal vote was not considered by the court.   That is true, for the reason that none was proved.   The number of votes cast for the bonds is shown, also the votes cast at the city elec- tion, which is said to have been exciting on account of the issue in school matters.   The votes cast at the election in November, 1889, are also shown, and it is claimed that this was an exciting election.   But, taking the finding of the court as true, about one-third of the voters in said city did not attend such election, which shows that but little public interest was taken therein.   The votes cast at the presidential election in 1888 and for county officers do not appear, nor have we any evidence as to the votes cast at the general election in 1887.   Had the proof shown that the number of votes cast in 1887 and in 1888 were but 1,300, and that the votes cast at the general election in 1889 were about 1,300, and that this number at the bond election June, 1889, had been swelled to more than 2,200, the conclusion would be almost irresistible in the absence of proof explaining such votes that the increase had been obtained by fraud.

We find, however, that the judge found that in June 1889, there were 1,928 legal voters in the city of Platts- mouth; presumably these voters were there in November, 1889, but because of a new registry law, many of the voters, being railway employes and on duty, failed to reg- ister and vote.   No one will contend that if the votes cast

in the city of Plattsmouth for president and state and county officers should equal or exceed 2,200, that any presumption of fraud would arise in June, 1889, because the city cast more than 2,200 votes. Why the returns of the two preceding general elections were not introduced in evidence we cannot understand, if it was sought to impeach the returns by showing a grossly increased vote in June, 1889. In such case the votes at preceding general elections for at least two years should be shown, and also the votes cast at any subsequent election. These votes may be explained by showing a lack of interest in the voters, or any other cause for an increase or decrease of the votes. Where, however, a city or precinct without adequate cause shows a grossly excessive vote, which is unexplained, it may be cause for reducing the vote to the ordinary average limit, or, if it cannot be separated and it is clearly apparent that fraud has been perpetrated, for rejecting it altogether. These are some of the modes by which fraudulent voting may be detected and the wrongs redressed. This cannot be done on a mere suspicion, however, as in the absence of proof to the contrary ballots cast are presumed to be valid. The case made by the record is not sufficiently definite to show that fraudulent votes were cast at Plattsmouth at the election in question.

The motion for a rehearing must be

OVERRULED.

THE other judges concur.