## STATE ex rel. SPAULDING *vs.* ELWOOD.

### WRIT OF MANDAMUS.

Heard February 10 1860.]                    [Decided February 23, 1860.

*Constitutional Law—Counties—Elections—Mandamus.*

An act of the legislature for the division of a county is constitutionally passed, and in force as a law, though it provides that it be submitted to a vote of the people of the county.

A county with an area of 900 square miles or less, cannot be constitutionally divided, without submitting the question of the division to a vote of the people of the county and a majority of the votes be in favor of the division.

The submission of the question of the division of a county is a different question from the submission of the question whether the act shall ever go into force. It is constitutional to submit the first of these to a vote of the electors.

State ex rel. Spaulding vs. Elwood.

When an act for the division of a county referred to the general election laws, and fixed the day, time and place, made the same persons inspectors of the election, and that the votes be canvassed, &c., in the same manner, as in case of a general election, it thereby makes all the provisions of the general laws applicable to the act.

An act may be in force, and a vote taken upon the question submitted under the act, and yet after the decision of that question, the act may become inoperative for want of a subject.

An application for a mandamus must show clearly and affirmatively, that the relator is entitled to the right claimed.

An application for a mandamus to compel an action dependent upon a vote for a division of a county, must show an election, and that a majority of the votes are in favor of the division; and if it be not so averred, the writ will be quashed upon motion; otherwise no issue can be made upon the writ.

The alternative writ of mandamus which was issued in this case, set forth that the relator, Benjamin B. Spaulding, presented to the respondent, G. DeWitt Elwood, who was the register of deeds of Green Lake county, a deed for registration, which Elwood refused to record, and endorsed thereon the following: " I acknowledge that this deed has to-day been presented for recording in this office, by Benj. B. Spaulding, and sufficient fees tendered, and I have refused recording the same for the reason, that said land is not situated in this county.    Office of register of deeds, Berlin, Green Lake county, Wis., Dec. 15th, 1859.        G. DEWITT ELWOOD,
Register."

The deed is set forth at length, and is for a tract of land in the town of Ripon ; and deeded by Alvan Bovay and wife to Spaulding, and properly acknowledged. .
The writ further averred, that, at the session of the legislature of 1859, an act was passed entitled " an act to annex a part of the county of Fond du Lac to the county of Green Lake," approved March 11, 1859; that it was published March 16, 1859, and embodied in the general laws of the state of Wisconsin, passed that year, as chapter 69 ; that by the provisions and terms of the act, the territory of the town and city of Ripon were detached and set off from the county of Fond du Lac, and attached and annexed to the county of Green Lake; that the act was submitted to a vote of the people of Fond du Lac county on the general election day in November, 1859, at which any qualified voter might vote " for detaching Ripon," or " against detaching Ripon," on a

separate ballot, to be deposited in a box used only for such purpose.

Other provisions of the act are then set forth, which are stated in the opinion of the court; the writ averred on information and belief, that notice of the election was given for the time and in the manner prescribed by the act; that from the return made to the clerk of the board of supervisors in Fond du Lac county, by the canvassers in the wards and towns of the county, of the votes, that the whole number so returned as having been given upon the question, was 4,910, of which 2,525 were "for detaching Ripon;" 2,385 "against detaching Ripon," making a majority of 140 of the votes so cast in favor of detaching Ripon from Fond du Lac, and annexing the same to Green Lake county in pursuance of the act; that it appeared from the same return, that there were cast 107 "for Ripon attached," 49 "for Ripon detached;" 28 "for division," and "against division" 211; that there was included in the vote "for detaching Ripon," and "against detaching Ripon," the votes in the towns of Forest and Friendship, the north ward of Waupun, and the fourth ward of Fond du Lac, which purport to have given a majority in the aggregate "against detaching Ripon" of three hundred and forty-seven, and in which no poll list of the vote was returned, as provided for in the act.

This writ the respondent moved to quash, and assigned the following causes: 1. That the act of the legislature mentioned in the writ, is unconstitutional; 2. That the act is inoperative; 3. That it appears upon the face of the writ that the relator is not entitled to the relief sought; 4. That sufficient facts are not set forth in the writ to entitle the relator to the relief sought; 5. That the writ is informal and insufficient.

*E. G. Ryan,* for the respondent.

*S. Crawford, E. S. Bragg,* and *A. D. Smith,* for the relator.

1. The act of March, 1859, is a constitutional act. The first section is absolute in its terms, and detaches the city and town of Ripon from Fond du Lac, and attaches the same to Green Lake county. It is therefore operative, because the legislature possesses the power to regulate the extent and boundary of the counties of the state. This is however subject to a vote of the people of the county, as required by the constitution, Art. XIII, § 8.

2. Section 2 of the act of March, 1859, provides for a sub-

mission to the people, which was done, and the form of the ballot was directed. The relator shows that a majority of such ballots were cast "for detaching Ripon."

3. The vote having been so cast, by section 4 of the act it became operative from and after Dec. 1st, 1859; and thus carried out the apt words and general scope of the act.

4. Section 5 of the act, which declares that it shall take effect from and after its passage, was necessary, in order that the legislative action should be complete, independent of any other power, and that the election should be legally authorized.

5. The respondent, as a county officer, discharging ministerial duties only, was bound to take notice from the record provided for by section 2 of this act, that the city and town of Ripon became and was *de jure* and *de facto*, a part of Green Lake county.

*By the Court*, COLE, J. This is a motion to quash an alternative writ of mandamus, issued herein, requiring the respondent to record a certain deed mentioned in the relation, and to vacate and discharge the same, upon the grounds:

1st. That the act of the legislature mentioned in the said writ is unconstitutional.

2d. That said act is inoperative.

3d. That it appears upon the face of said writ that the relator is not entitled to the relief sought.

4th. That sufficient facts are not set forth in the writ to entitle the relator to the relief sought.

5th. That the writ is informal and insufficient.

The act referred to in the motion is chapter 69 of the General Laws, 1859, page 75, entitled "An Act to annex a part of the county of Fond du Lac to the county of Green Lake." The first two sections of the act are as follows:

"§ 1. Township number sixteen north, of range number fourteen east, embracing the territory of the town and city of Ripon, is hereby detached and set off from the county of

Fond du Lac, and attached and annexed to the county of Green Lake.

"§ 2. This act is hereby submitted to a vote of the people of Fond du Lac county, in the manner following, that is to say: on Tuesday next succeeding the first Monday in November next, an election shall be held in the several towns and wards in said county, at which election any qualified elector of said county may vote 'FOR DETACHING RIPON,' or 'AGAINST DETACHING RIPON,' on a separate ballot, written or printed, to be deposited in a box used only for such ballots. Such election shall be held in the several towns and wards during the same hours of the day as the election which is held for other purposes on that day, and the votes of the towns and wards severally, and of the whole county, shall be canvassed in the same manner as the votes for state senator are canvassed in Fond du Lac county; and said canvass, when so made, shall be recorded by the clerk of the board of supervisors of said county, in his office, and a certified copy of the same shall be forthwith forwarded by said clerk to the Secretary of State, to be filed in his office."

The third section directs the manner in which notices of the election mentioned in the preceding section shall be given.

"§ 4. If a majority of all the votes cast at such election in said county on this subject shall be " FOR DETACHING RIPON," then this act shall be in full force and effect from and after the first day of December, 1859.

Section five declared the law to be a public act, and that it shall take effect on and after its passage.

Several objections have been taken to the validity of the act, by the counsel, who argued in support of this motion. In the first place, he insists that the law was not enacted in conformity to the provisions of the constitution, but was submitted by the legislature to the electors of the county of Fond du Lac, to determine whether the same should become a law

State ex rel. Spaulding vs. Elwood.

or not; and he relies mainly upon the language used in the second section of the act, to sustain this view of the case. It is quite true that by the second section it is said that "this act is hereby submitted to a vote of the people," &c. Yet, when the whole language of the act is considered, it will be seen that the legislature did not intend to make the operation and taking effect of the law depend upon a vote of the people. For by the fifth section it is expressly provided that the law shall take effect and be in force from and after its passage, which is clearly inconsistent with the idea that it was not to take effect, except upon the happening of any future event, such as a vote of a majority of the people. The object and intent of the legislature, in passing the law, are clear and manifest.

By the constitution, Article XIII, section 7, no county with an area of nine hundred square miles or less, can be divided, or have any part stricken therefrom, without submitting the question to a vote of the people of the county, nor unless a majority of all the legal voters of the county voting upon the question, shall vote for the same. It is admitted that the county of Fond du Lac comes within the constitutional restriction, and cannot be divided, or have any part stricken therefrom, without the question of division is first submitted to the people, and a majority of the legal voters of the county voting upon the question, shall be in favor of such division.

Now, in the first section of the law under consideration, the legislature provided, in substance, for detaching or striking off a portion of the county of Fond du Lac, and attaching the same to the county of Green Lake, in the event that a majority of the legal voters of the former county should be in favor of such a division, at the election to be held under and pursuant to the other sections of the act. Hence, it was not whether the law should take effect, or be in force for any purpose, which was submitted to a vote of the people, but the

question of the division of the county. Had the legislature used constitutional language, and said, that the question as to whether the town and city of Ripon should be detached and set off from the county of Fond du Lac, and attached, &c., there would have been no ground for contending that the legislature made the force and validity of the law depend upon the event that it should be approved by the people. It would then be understood, that the law was to take effect *in presenti*, for the purpose of taking the expression of the people at the polls upon the question therein submitted; and the question of division being definitely settled and passed upon by the voters of the county, in conformity to the constitution. And notwithstanding a little verbal inaccuracy in the use of language, we think that is precisely·what the legislature has done in the present instance.

Again, it is objected that the law makes no provision as to who shall act as the inspectors of the election; nor as to who shall canvass the votes; nor where they shall be canvassed; and imposes no penalty for illegal voting upon the question of the division of the county, or for fraudulently conducting the election and determining the result. We need only refer to the second section of the law to show that this objection is not well founded. That section provides that on the Tuesday next succeeding the first Monday in November, after the passage of the law, an election should be held in the several wards and towns of the county of Fond du Lac, at which election any qualified elector of said county might vote "for detaching Ripon," or "against detaching Ripon," upon a separate ballot, &c.; that said election should be held in the several towns and wards, during the same hours of the day as the election which is held for other purposes on that day; and that the votes of the towns and wards severally, and of the whole county, shall be canvassed in

the same manner as the votes for state senator of Fond du Lac county are canvassed.

Here, then, it will be seen, that there is a direct reference to the general election law of the state, making the provisions of that statute applicable to this act, declaring, in effect, that the persons who act as inspectors of election upon that day, shall constitute and be the inspectors of the election held in pursuance of this act; and that the votes of the several towns and wards, and of the whole county, upon this question of division, shall be canvassed and determined as the votes for state senator of that county. Certainly this is sufficiently clear and explicit as to how the election under this law is to be conducted, and the result ascertained; and we have no doubt but all the penal provisions of the general election law, in reference to illegal voting, or improper conduct on the part of inspectors, directly applied to any illegal voting or improper conduct of such inspectors, in conducting the election, and ascertaining the result under this act. It was suggested that this legal consequence could not follow, for the reason, that the general election law only applies to elections in the proper sense of that word, such as the choice of public officers, and not to a proceeding for taking an expression of the public will upon the question of the division of a county.

We must give to the language used in these statutes, its popular and usual signification, rather than a refined and restricted meaning; and, therefore, as before indicated, we have no doubt but the legislature did intend to make the provisions of the general election law applicable to the act of voting upon the question of the division of the county. Neither do we think this was a special election, within the meaning of the statute.

But it is objected that the law is inoperative. We do not feel the force of this objection. We have alluded to the lan-

guage of the fifth section, which declares, that the law shall take effect from and after its passage; that is, the law was to be in force, for the purpose of holding an election, or for taking the will of the electors of the county upon the question of division. If this will should be adverse to such division, then the law would cease to have any further effect, for the reason, that there would be nothing upon which its other provisions could operate. But if, in the language of the fourth section, "a majority of all the votes cast at such election" should be "for detaching Ripon," then the first section was to become operative; and the town and city of Ripon, by virtue of the act, and in accordance with the popular will, upon that subject expressed, was annexed to the county of Green Lake. It appears to us, that this is the plain, obvious intent of the law; and we are not able to place any other construction upon it.

The third and fourth grounds assigned in the motion for dismissing the alternative writ, resolve themselves into the same objection, which is, that it does not appear from the face of the writ that the relator is entitled to the relief sought.

Without going into any minute detail of the allegations and statements contained in the affidavit and alternative writ, we will say, that in our judgment, they do not show clearly and affirmatively, as they should, that a peremptory writ should issue to compel the respondent to record the deed mentioned in Green Lake county. The writ fails to allege, in clear and direct terms, that the election was held under the law, &c., and that at such election a majority of the legal voters of Fond du Lac county, voting upon the question, was in favor of the proposed division. This is a material substantive allegation, and should have been averred in the writ. It appears inferentially from some allegations in the alternative writ, that an election was held, and that certain votes were canvassed, &c., a majority of which were in favor of

" detaching Ripon;" but we think it should be averred in a clear, distinct manner, that an election was held under the act, and that a majority of all the legal votes cast upon the question was in favor of annexing the town and city of Ripon to the county of Green Lake.

We lay no particular stress upon the particular form or expression upon the ballot, by which the electors indicated their will upon this subject; although we think it quite likely that the legislature intended to prescribe the form of the ballot in the act itself. Certain votes are set forth in the relation " for Ripon attached," " for Ripon detached," " for division," and " against division;" but what the electors really intended by these various forms of expression, may admit of some doubt. If the votes " against division," and " for Ripon attached," are all intended to be against the setting off of the town and city of Ripon to the county of Green Lake, then, as we understand the vote, it is adverse to the proposed division. It therefore becomes the more material and necessary that the alternative writ should contain the averments which have been suggested, in order that issue may be taken upon them, or that the court may see that the relator has a clear right to have his deed recorded in Green Lake county.

The motion to dismiss must therefore be sustained; but the relator can amend his relation and alternative writ, and serve a copy of the amended writ within ten days, upon payment of ten dollars costs. The respondent can have twenty days, after service of such amended writ, to make answer thereto.