FOWLER and another vs. BAILLEY and others.

Where a party furnishes materials for a building at different times but in pursuance of *one* contract, he is in time if he commences proceedings to establish his lien, within one year from the date of the *last* act done in execution of the contract.

Thus where persons building a mill made a contract in *May*, 1857, with machinists, for all the machinery and materials required, and received them all at that time except the bolting cloth, but being uncertain what kind of cloth they would use, told the machinists they would order it from them afterwards, and they did order it and receive it in the following September; and the machinists commenced proceedings to enforce their lien, in *August*, 1858, it was *held*, that the bolting cloth having been furnished under the *same* contract as the other materials, the proceedings were commenced in time to enforce the lien for the whole amount of the materials so furnished.

Where copartners intend to give to real estate the character of partnership property, and treat it as such, it will, like all other assets of the firm, be applied to the payment of partnership debts, though the *legal* title may be in one of the partners, or may appear to be in all of them as tenants in common.

June Term,
1861.

FOWLER et al.
v.
BAILLEY et al.

Where A, B & C were partners in building a mill, and in the land on which
it stood, but A, who held the legal title to the land, conveyed it afterwards
to D, who had notice of the prior lien of a material man for machinery fur-
nished in the construction of the mill, and an action was afterwards brought
to enforce that lien, but the process was not served upon A, but on B, C and
D only, it was *held*, that judgment for the amount of the lien could be taken
in form against all the partners, to be enforced against the partnership
property to which the lien attached (sec. 11, chap. 124, R. S., 1858), and a
sale under the judgment would pass the title to the property.

APPEAL from the Circuit Court for *Grant* County.

This was an action to enforce a lien for materials furnished
in the construction of a mill. The defendant *Lewis Bailley*
alone answered. The case is stated in the opinion of the
court. Judgment for the plaintiffs.

*Mills & McKee*, for appellants:

1. A judgment against joint debtors, some of whom are
not served, would be a lien on the real estate held jointly by
all, only from the time of its entry; but the lien of a mate-
rial man relates back to the time of furnishing the material.
*Dewey vs. Fifield*, 2 Wis., 80; 4 Iowa, 116. Where one of
several joint mortgagors has not been served, no judgment
can be rendered against any of them. 2 Mon. Pr., 215. As
the action was to enforce a lien, can the plaintiffs levy their
execution on other property than that mentioned in their pe-
tition? They have not a general judgment, to be enforced
against all joint property of the defendants, and the statute
authorizing a judgment against all the defendants, including
those not served, does not apply. *Wesley Carroll* especially
should have been served in this case, because he was the
owner in fee of the property at the time the lien, if any, ac-
crued. 2. The plaintiffs could have no lien except for the
two pieces of bolting cloth delivered in September, 1857.
The contract was not entire in such sense that the plaintiffs
could have recovered nothing had they never furnished the
bolting cloths. The machinery sent in May, 1857, was used
by the defendants; they paid $600 on it, and were indebted
for the balance. If a manufacturer agrees to furnish all the
machinery a mill may need in five years, can he assume that
all the items of his running account during that period were
furnished at the date of the last article? 1 Code R. (N. S.),

230.  3. *Lewis Bailley* contends that as against him there could be no lien unless the claim was filed before his purchase.  The statute gives such a lien preference over *other liens* originating subsequent to the commencement of the building or repairs, but says nothing of purchasers.  Is a purchaser compelled to take notice when materials have been furnished?  Should not the manufacturer file his lien so as to notify him?

June Term, 1861.

Fowler et al.
v.
Bailley et al.

*James H. Knowlton,* for respondents, cited 7 Harris, 341; 6 id., 160; 10 id., 489; Sergeant's Mechanic's Lien Law, 150–166.

*By the Court,* COLE, J.  This action was brought by the respondents as material men, to enforce a lien under the statute.  The main facts of the case, or those upon which the questions of law arise, may be stated as follows:

August 21.

The appellants, *John H. Bailley, Wesley Carroll* and *Simon P. Gregory,* were engaged as partners, in the summer and fall of 1857, in building a flouring mill on a forty acre tract of land in Grant county.  The respondents were machinists, living in Pittsburg, and supplied them with materials and machinery for the mill.  All the materials and machinery were furnished in May, 1857, except two pieces of bolting cloth, which were furnished in September following.  The appellants used the materials and machinery as they came to hand.  It appears that the agent of the appellants contracted for all the materials and machinery at the same time in May; but not being satisfied as to what kind or number of bolting cloth should be used, told the respondents that he would send an order for it, after consulting with his principals at home.  The order was sent, and the cloth shipped and received in September.  On the 19th of August, 1858, the respondents commenced proceedings under the statute to perfect their lien against the mill and premises, for the balance due them for machinery and materials.  The legal title to the land on which the mill was erected, was in *Wesley Carroll* until November, 1857, when he conveyed the same to his co-defendant *Lewis Bailley.*  It is admitted, however, that *Lewis Bailley* purchased with full knowledge of

the respondents' lien. *Wesley Carroll* was made a party to the suit, but was not served with process either by publication or otherwise. And the only question of any difficulty presented by the record is, whether the lien against the land and mill can be made effectual, the legal title, as before stated, remaining in *Carroll* until November, when *Carroll* was not served with process. On the part of the appellants it is contended that it cannot. It is insisted that there was no evidence of title in any one of the partners except *Wesley Carroll*, at the time the mill was built and machinery furnished; that there was no sufficient evidence to establish an equitable title to the real estate in either *John H. Bailley* or *Gregory;* and that, inasmuch as there was no service of summons in any manner upon *Wesley Carroll*, the court could not render a judgment either joint or several against him, or in form against him and his co-defendants who were served with process; neither could the respondents have a lien upon the premises, for the reason that *Carroll* could not be joined in the judgment with his partners, who had no interest in the premises to satisfy the lien.

We deem this an erroneous view of the case. In the first place it is to be assumed upon this record, that *Carroll* was interested as a partner in the adventure of building the mill, and consequently was jointly liable with the other partners for the materials and machinery furnished for that purpose. The circuit court found as a matter of fact, that *John H. Bailley, Wesley Carroll* and *Simon P. Gregory*, were partners, doing business under the name and style of Bailley, Carroll & Co., and that the materials and machinery were sold and delivered to them as such partners; and indeed upon this point the testimony in the case is too clear to admit of controversy. It being then assumed as a conceded fact that these parties were partners in the business of building the mill, upon very plain and obvious principles, they were jointly liable for all the materials and machinery furnished for the common objects of the partnership. These persons being jointly indebted upon the contract, the respondents could proceed against those served with process and take judgment in form against all jointly indebted, and enforce

it against the joint property of all, according to the express provisions of the statute. R. S. 1858, chap. 124, sec. 11.

· Again, the circuit court found that although the legal title to the land was in *Wesley Carroll,* still *John H. Bailley, Wesley Carroll* and *Simon P. Gregory,* as partners, were the equitable and beneficial owners of the mill and land. Upon this point the witness Nathaniel Moore in substance testified, that he heard *John H. Bailley, Wesley Carroll* and *Gregory* talk over the terms of the partnership, and that it was perfectly understood between them that the land should be put in as a part of the partnership · property. This witness is entirely uncontradicted, and we see no sufficient reason for discrediting his statements. Indeed when we consider that there was a subsisting partnership as to the building of the mill, and that the parties seem to have treated the land, by the use to which it was applied, as partnership property, we have the most satisfactory grounds for relying on them. Now it is indisputable that so far as the creditors are concerned, they have a right to look to all the partnership property for the payment of their debts. And although the legal title to the land might in fact be in *Carroll,* still if he held it in trust for the partnership, then obviously it must be subject to all equities existing in favor of the creditors of the firm. For it is a familiar principle in respect to the law relating to partnership, that when the co-partners intend to give real estate the character of partnership property, and when they use and treat it as such, then it will, like all other assets of the firm, be applied to the payment of the partnership debts, notwithstanding the paper title may happen to be in one partner, or appear to be in all as tenants in common. Collyer on Partnership, § 135, *et seq.,* and cases cited in the notes. Keeping in view this principle, we must hold that although the legal title to the land was in *Wesley Carroll,* or, what is the same thing, in his grantee *Lewis Bailley,* who took the conveyance with full knowledge of the respondents' lien, this title must be considered as held in trust for the partnership, and, with the beneficial estate, must go, if necessary, to pay the debts of the firm. Now there will be no controversy but the lien of the respondents

June Term,
1861.

Fowler et al.
v.
Bailley et al.

attached to the entire interest of the partnership in the mill and land. And if the equitable estate of the land was in the partners, it was held by the lien. Nothing but the dry, legal title was in *Wesley Carroll* when the lien accrued. Now suppose this title had in fact remained in him at the time the judgment was rendered; could not the lien be enforced against the land even if he had not been served with process? Certainly it could, if the land were partnership property, as the evidence shows. Nor can we see that *Wesley Carroll* can have any sufficient reason to complain because the property of the firm has been applied to pay its debts. But here however the person who took the legal title has been made a party and served with process, and we cannot see why a sale under the judgment will not pass a good title to the purchaser.

A question is raised as to whether the respondents could have a lien for the full amount of their claim, or only for the two pieces of bolting cloth furnished in September, 1857. This depends upon the further question whether the cloth was purchased upon a distinct and independent contract, or under the one upon which the machinery and the rest of the materials were purchased. On this point we think the evidence is clear, and shows that the cloth, although not shipped and delivered until September, yet was purchased with the other articles in May. The agent Moore expressly states that he contracted for all the articles at the same time; that the contract was entire for all the inside work, machinery &c. of the mill, of which the bolting cloth was a part. He explains the reason why the cloth was not forwarded with the other articles. He ways he was ordered to buy No. 10, but when he got to Pittsburg he was advised to buy No. 9. He then told the respondents to wait until he returned home and consulted with his principals as to which kind of bolting cloth they would have, and No. 9 was finally ordered. But we have no doubt it was furnished upon the original contract. This being so, the respondents were undoubtedly in time, if they filed their petition for a lien within a year from the date at which the last article was furnished. For the respondents could not be said to have performed their contract

until they had furnished all the materials and machinery originally contracted for. And we understand the law upon this subject to be, that when a party furnishes materials in pursuance of a contract, he is in time if he files his petition within one year from the date of the last act done in execution of it. *Holden vs. Winslow*, 6 Harris' Penn. R., 160; *Bartlett vs. Kingan*, 7 id., 341; *Yearsley vs. Flanigen*, 10 id., 489.

The conclusion at which we have arrived is, that the judgment of the circuit court must be affirmed.