THE STATE EX REL. LEONARD, Respondent, vs. ROSENTHAL, Appellant.

*November 15, 1904—January 10, 1905.*

*Elections:* Quo warranto: *Pleading: Statutory requirements: Cause of action: Demurrer* ore tenus: *Witnesses: Evidence: Hearsay: Names:* Idem sonans: *Cross-examination: Credibility: Public records: Non-existence of specific document or entry: Declarations of voter: Res gestæ: Instructions to jury: Presumptions: Burden of proof: Special verdict.*

1. Where a statute imperatively requires a complaint to state a certain fact, such averment is essential to the cause of action.
2. Under sec. 3468, Stats. 1898, providing, among other things, that in actions of *quo warranto*, involving title to a public office, it shall be necessary for the relator to state in his complaint the actual number of legal votes cast for the relator *and for the defendant,* a complaint which states the actual number of legal votes cast for relator, but omits to state, either directly

or by implication, the number of legal votes cast for the defendant, is fatally defective, and a demurrer *ore tenus* thereto should be sustained.

3. In an action of *quo warranto* to test title to the office of assessor of a village, witnesses who did not live in the village at the time of the election, but went into the village some weeks afterwards, testified that they then made systematic inquiries at various manufacturing establishments and boarding houses in the village, as well as of residents of the village, as to whether certain alleged illegal voters were known to reside in the village on election day. These witnesses were then allowed to testify, against objection and exception, that, from such investigation, they were not able to find that such voters resided in the village on election day. *Held*, that the great practical difficulty of proving non-residence did not justify the admission of such evidence in violation of the rule excluding hearsay evidence.

4. In such case, in order to qualify the witness to testify as to the residence in the district of one alleged to be an illegal voter, it is not absolutely necessary that the witness should have actually resided in the election district at the time of the election, but he should show that, at the time, he was to some substantial extent acquainted with the inhabitants of the district.

5. Where two names appeared on the poll list of an election as Frank Bersche and George Long, it is not error to admit evidence that they were non-residents, where it was alleged in the complaint that two of the votes claimed to be illegal were cast by Frank Bierse and George Lang.

6. In an action to test defendant's right to an elective office, a witness for relator, after having testified to making extensive investigations after the election as to the residence of a number of alleged illegal voters, in the course of which he went to another city, was asked on cross-examination whether relator did not pay him for his time, and also the expenses of his trip. *Held*, that it was error to sustain objections to such questions, since it is competent on cross-examination to show the relations existing between the witness and the parties to the action, as bearing on his credibility.

7. At common law the fact that a specific document or entry did not exist in public records might be proven by the testimony of the custodian or of any one who had made a search of the records for that purpose, and such rule is not changed by sec. 4163, Stats. 1898 (providing for official certificate that a document, etc., cannot be found).

8. The non-residence of one in a particular town, village, or city cannot be proved by testimony that a person of the same name was found to be included in the directory of a nearby populous city.

9. The voluntary declarations of a voter who voted at an election, that he was not a resident of the voting precinct at that time, are admissible.

10. It is error to instruct the jury that the burden of proof is on both parties litigant at the same time.

11. When one has been declared elected by the board of canvassers of the election, and is holding the office under such determination, a presumption is created that he received the number of votes stated in the certificate, and casts on his opponent the burden of showing that the certificate is false.

12. In such case, when such presumption is rebutted by competent evidence, it then devolves upon the one holding the office to establish the fact that he received the greater number of votes by other evidence, in order to prevent judgment of ouster.

13. In *quo warranto* to try title to an elective office two questions should determine the case: How many legal votes were cast for the relator, and how many legal votes were cast for the defendant?

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

This is an action of *quo warranto* brought by the relator to remove from the office of assessor of the village of West Allis the respondent, *August Rosenthal.* The complaint, after alleging the corporate existence of the village of West Allis, and the fact that the relator was a resident and elector of said village on the 7th of April, 1903, alleges that an election for village officers was held on the last-named date, and that prior to said election the relator was duly nominated for the office of assessor of the village on the Republican ticket, and that the defendant was the nominee for said office on the People's ticket, and that no other candidates were voted for at said election; that at said election 456 ballots were found to have been cast by the canvassers, of which eight were defective and not counted; that the relator received 218 legal votes; that

State ex rel. Leonard v. Rosenthal, 123 Wis. 442.

there were cast for the respondent at said election a large number of void and fraudulent votes, the total number of which
"the relator is unable to state, but that the same exceeds
thirty;" that twenty-nine persons (whose names are given)
voted at said election for the defendant and the People's
ticket who were, for various reasons, not qualified electors of
said village; that various persons fraudulently attempted to,
and did, colonize men in said village for the purpose of voting
at said election, who were not qualified electors of said village, and succeeded in procuring said persons to vote the People's ticket; that the total number of votes cast for assessor
was 436, including those cast by persons not qualified electors
of the village; that the 218 votes lawfully cast for the relator
was a majority of all the legal votes cast for the office of assessor, and that the relator was thereby duly elected; that on
April 15, 1903, relator was requested by the inspectors of
election to draw lots for the office, the said inspectors having
returned 218 votes cast for the defendant, and having declared the election to be a tie; that the relator refused to draw
lots for the reason that he had been legally elected, and that
thereupon a person was appointed by the inspectors to draw
lots in his place, and that the defendant was declared elected;
that the relator duly filed his oath of office and qualified as
assessor on the 15th of April, and on the 16th of April made
demand upon the defendant for said office, which was refused,
and the said defendant still retains the same. The complaint
further alleges that he petitioned the attorney general to bring
this action, and that he refused, and demands judgment declaring that the defendant is not entitled to said office, and
that he be ousted therefrom, and that the relator be admitted
thereto. The defendant, by answer, alleged that the whole
number of ballots counted by the inspectors for the office of
assessor of the village was 436, of which the relator received
218, and the defendant 218, whereupon the inspectors of election ordered lots to be drawn for the office, upon which draw-

ing the defendant was duly declared elected to said office. The defendant further alleges that he received the greatest number of votes cast by duly qualified electors for the office, and was legally elected thereto, and duly qualified therefor, and is now legally holding the said office.

The action was tried before a jury, and a special verdict rendered as follows:

"(1) What was the total number of legal votes cast by the duly qualified electors of the village of West Allis at the village election holden on the 7th of April, 1903, for the office of assessor? A. (426) four hundred and twenty-six. (2) What was the total number of legal votes cast by the duly qualified electors of said village of West Allis at said election for the relator, *George M. Leonard,* for the office of assessor? A. (214) two hundred and fourteen. (3) What was the total number of legal votes cast by the duly qualified electors of said village of West Allis at said election for the respondent, *August Rosenthal,* for the office of assessor? A. (212) two hundred and twelve. (4) Were any illegal votes cast at said election for the office of assessor? A. (10) ten. (5) If you answer the preceding question in the affirmative, how many, if any, of such illegal votes were cast for the relator, *George M. Leonard?* A. (4) four. (6) If you answer the fourth question in the affirmative, how many, if any, of such illegal votes were cast for the respondent, *August Rosenthal?* A. (6) six."

Upon this verdict, judgment of ouster, with costs, was rendered in favor of the relator, and the defendant appeals.

For the appellant the cause was submitted on the brief of *Edgar L. Wood.*

*H. L. Eaton,* for the respondent.

Winslow, J. The appellant's contentions will be considered *seriatim:*

1. It is provided by sec. 3468, Stats. 1898, among other things, that in actions of this nature it shall be necessary for the relator to state in his complaint "the actual number of legal votes cast for the relator *and for the defendant.*" The

complaint before us does not state, either directly or by im-
plication, the actual number of legal votes cast for the defend-
ant.    Where a statute imperatively requires a complaint to
state a certain fact, such averment is essential to the cause of
action.    M. E. Church v. N. P. R. Co. 78 Wis. 131, 47 N. W.
190.    The requirement above named was first incorporated
in our law by ch. 127, Laws of 1869, hence the decisions prior
to that statute (such as State ex rel. Dickinson v. Brunner,
20 Wis. 62), holding that it was not necessary to state in the
complaint the number of votes given for each candidate, do
not apply.    The demurrer ore tenus to the complaint should
therefore have been sustained.

2. There were a number of witnesses called by the relator
who did not live in the village at the time of the election, but
went into the village some weeks afterward, who testified that
they then made systematic inquires at the various manufactur-
ing establishments and boarding houses in the village, as well
as of residents of the village, as to whether certain of the al-
leged illegal voters were known to reside in the village on elec-
tion day.    These witnesses were then allowed to testify,
against objection and exception, that, from such investiga-
tion, they were not able to find that such parties resided in
the village on the day of the election.    That this evidence is
strictly hearsay evidence cannot be successfully denied.    In-
deed, some of it was the second degree of hearsay, if such an
expression may be coined, for the reason that it was based
upon like investigations of other persons, who stated their re-
sults to the witnesses who were on the stand, who then gave
them at second hand to the court. . We recognize the great
practical difficulty in proving the fact of nonresidence, but
we have not been able to convince ourselves that this diffi-
culty justifies so serious an infraction of the rule excluding
hearsay evidence, nor are we referred to any authorities so
holding.    In State ex rel. Hopkins v. Olin, 23 Wis. 309, it
was held that evidence by residents of the village that no such

persons as some whose names appeared on the poll list as having voted were known by them to have resided in the village is sufficient evidence to go to the jury upon the question whether such votes were illegally cast. It is said in McCrary on Elections (4th ed.) § 469, that witnesses are often called to testify that persons whose names appear on the poll list are not known to them to be residents of the voting precinct. "This kind of evidence is admissible for what it is worth, but it is manifest that its value must depend upon circumstances." The author further says, in substance, that if the voting district is large and populous, and the witness has not an intimate and extensive acquaintance with the inhabitants, such testimony will be of little value, but that if the district is not large or populous, and the witness has an intimate and extensive acquaintance with the inhabitants, his evidence may be quite satisfactory, especially if it appear that the alleged illegal voter could not be found in the district soon after the election. In *Todd v. Cass Co.* 31 Neb. 150, 47 N. W. 748, a still more restricted rule is laid down as to the requisites of this kind of proof, and we have found no case justifying the broad ruling of the court before us. While we do not think it is absolutely necessary that the witness should have actually resided in the election district at the time of the election, we think it is necessary that he should first show that he was at that time, to some substantial extent, acquainted with the inhabitants of the district, or some portion of them, and then he may testify that he knew no such person as a resident of the district.

3. Two of the alleged illegal votes were alleged in the complaint to have been cast by Frank Bierse and George Lang, respectively; and evidence was received, against objection, tending to show that two persons whose names appear on the poll list as Frank Bersche and George Long were nonresidents of the village, and these rulings are alleged as error. We think these names are sufficiently alike in sound to come under

the rule of *idem sonans,* and hence that there was no error.
21 Am. & Eng. Ency. of Law, 313, and notes.

4. A witness for the relator, named Tibbetts, after having
testified to the making of extensive investigations after the
election as to the residence of a number of the alleged illegal
voters, in the course of which he went to La Crosse, was asked
on cross-examination whether the relator did not pay him for
his time, and also pay the expenses of his trip, or part of
them; and objections to such questions were sustained. This
ruling was plainly erroneous. It is always competent upon
cross-examination to show the relations, intimate or otherwise,
which exist between the witness and the parties to the action,
as bearing upon his credibility. 3 Jones, Evidence, § 829.

5. A witness was allowed, against objection, to testify that
he had made a search of the records in the offices of the clerks
of the various courts of record of Milwaukee county, to ascer-
tain whether Frank Bierse had ever been naturalized as a
citizen, and had found no record of such naturalization. The
only contention made is that the clerks themselves should
have been produced, with their original records, or that cer-
tificates of the clerks to the fact that no such record could be
found should have been introduced, under sec. 4163, Stats.
1898. The objection is not well taken. At common law the
fact that a specific document or entry did not exist in public
records might be proven by the testimony on the stand of any
one who had made a search of the records for the purpose.
This was not confined to the custodian, though the custodian
was usually called. 3 Wigmore, Evidence, § 1678, subd. 5.
The custodian could not make a certificate which would be
admissible as evidence of the fact; hence the passage of sec.
4163.

6. A witness for the relator, after stating that he could not
find certain of the alleged illegal voters as residents of the
village, was allowed to state, against objection, that he did
find persons answering to those names as residents of Milwau-

kee on the 15th of April. Upon cross-examination it appeared that he did not see any of such persons, except one, and that his testimony that they resided in Milwaukee was founded upon the fact that he found their names in a city directory of Milwaukee, the date of issue of which directory he was unable to state. We cannot think that such evidence is competent. The directory may have been issued years before the election, but, aside from this consideration, the fact that the directory of a large city like Milwaukee contains many names identical with names borne by residents of other places is well known. If nonresidence could be proven by this fact, then it would be easy to make a *prima facie* case of nonresidence against very many respectable citizens of towns, villages, and cities in all parts of the state, by simply showing that a similar name was to be found in a previously issued directory of the city of Milwaukee. We have no hesitation in holding that this evidence was inadmissible.

7. A number of witnesses for the relator were allowed to testify, against objection, that some time after the election they talked with persons bearing the same name as certain names appearing upon the poll list, and that these persons each stated that they voted at the election against the relator, and that they were not residents of the village at that time. Were the question of the admissibility of this testimony a new one in this court, we should be obliged to confess that it would admit of very serious doubt. There is much authority to the contrary, and upon quite persuasive reasoning. McCrary, Elections (4th ed.) §§ 484–486; *Gilleland v. Schuyler,* 9 Kan. 569; *Dean v. Miller,* 56 Neb. 301, 76 N. W. 555; *People ex rel. Dean v. Comm'rs,* 7 Colo. 190, 2 Pac. 912; *Kreitz v. Behrensmeyer,* 125 Ill. 141, 17 N. E. 232; *Lauer v. Estes,* 120 Cal. 652, 53 Pac. 262. The reasoning in these cases is that declarations made, accompanying the act of voting, may be properly admitted as a part of the *res gestæ* of the election, but that declarations made afterwards, not being

the statements of a party to the litigation, are strictly hearsay. The opposite view, however, is not without respectable authority, and it was expressly approved by the court in the case of *State ex rel. Hopkins v. Olin,* 23 Wis. 309, which case received approval on this point in *State ex rel. Bell v. Conness,* 106 Wis. 425, 82 N. W. 288, though in the latter case exclusion of such testimony was upheld on the ground that the offer was not sufficiently definite as to the time and substance of such declaration. Whatever might be our ideas upon the question as an original proposition, we do not feel that we should now depart from the rule which has stood unchallenged in this state for more than thirty-five years, and which has doubtless been acted upon by parties and by trial courts many times since it was laid down. The reasons given for the ruling are that the person who has voted is considered a party to the controversy, and hence that his voluntary declarations are admissible.

8. The trial court charged the jury upon the subject of the burden of proof as follows:

"The burden of proof in this case as to all the material facts necessary to sustain the plaintiff's claim is upon the plaintiff. He must show or prove by competent evidence, so as to satisfy your minds by a preponderance of all the evidence, that such facts exist as alleged by him—that is, the plaintiff has the burden of proof as to such matters as he alleges—and, in order for you to answer the questions which will be submitted to you, as the plaintiff contends you should answer them, you must be satisfied by a preponderance of all the evidence that his contention is correct.

"The defendant has alleged, among other things, that he received the greatest number of votes cast by the duly qualified electors of said village for the office of assessor. The burden of proof in this action as to all the material facts necessary to sustain the defendant's allegations is upon the defendant. He must show or prove by competent evidence, so as to satisfy your minds by a preponderance of all the evidence, that such facts exist as alleged by him—that is, the de-

fendant has the burden of proof as to such matters, as he alleges—and, in order for you to answer the questions which will be submitted to you as the defendant contends you should answer them, you must be satisfied by a preponderance of all the evidence that his contention is correct."

"I further charge you, gentlemen of the jury, it is conceded that the defendant received a certificate of election as assessor, issued by the proper officers, in proper legal form; and the jury is instructed that said certificate is *prima facie* evidence of the defendant's right and title to said office, and his said right and title to said office can only be overcome by some positive testimony that illegal votes sufficient to change the result of said election were cast and counted for the defendant. But when it shows by satisfactory evidence that the certificate does not state the truth as to the result of such election, the presumption in favor of the incumbent, based upon such certificate, is rebutted, and then the burden is thrown upon the defendant to establish his right to the office by other competent evidence, to show that he has received an equal number or a greater number of legal votes than the plaintiff."

There is certainly confusion here, rather than helpfulness. The first portion of these instructions says, in effect, that the burden of proof is upon both parties at the same time. It was proven at the inception of the case that the defendant was declared elected by the board of canvassers of the election, and was holding the office under such determination. This created a presumption in his favor that he had received the number of votes stated in the certificate, and cast upon the relator the burden of showing that the certificate was false, thus rebutting the presumption. When this has been done by competent evidence, it then devolves upon the defendant to establish his right (i. e., the fact that he received the greater number of votes) by other evidence, in order to prevent a judgment of ouster. *State ex rel. Swenson v. Norton,* 46 Wis. 332, 1 N. W. 22. These rules should have been given to the jury.

It is not perceived why it was deemed necessary to submit so many questions to the jury, in making up the special ver-

dict. Two questions would determine the case, viz., how many legal votes·were cast for the relator, and how many legal votes were cast for the defendant.

While all the errors assigned have not been specifically discussed, it is believed that the principles stated fully cover the claims of error made.

*By the Court.*—Judgment reversed and action remanded for a new trial.