Town of Burke and another, Appellants, v. City of Madison, Respondent.*

*October 4—October 30, 1962.*

---

* Motion for rehearing denied, without costs, on January 10, 1963.

For the appellants there were briefs by *Robert Mortensen*, and oral argument by *Robert D. Martinson*, both of Madison.

For the respondent there was a brief by *Edwin C. Conrad,* city attorney, and *Orr, Isaksen, Werner & Lathrop,* special counsel, and oral argument by *Leon Isaksen* and *Trayton L. Lathrop.*

CURRIE, J.   The two issues presented by this appeal are:

(1) Is the statutory procedure provided for contesting a referendum election the exclusive remedy for so doing thus precluding in this action defendant city's disputing the election result certified by the election inspectors?

(2) If the preceding question is answered in the affirmative, is the principle of exclusive remedy vitiated and rendered inapplicable to the facts of the instant case because the election inspectors failed to attach to their certification of the election result an affidavit verifying such certification?

*Election-contest Statute Exclusive Remedy.*

Sec. 66.021 (5) (d), Stats. 1957, provides that an annexation referendum election "shall be conducted as are other town elections in accordance with ch. 6 [Stats.] insofar as applicable." Among the sections of ch. 6, Stats. 1957, applicable to the referendum election at issue is sec. 6.66 (1) which provides in part as follows:

"Whenever any candidate, or any elector who voted upon any constitutional amendment or upon any proposition, voted for at any election, within three days after the last day of the meeting of the board of county canvassers, or in the case of an annual, regular, special, or referendum election in any city, town, or village, *within three days after the last meeting of the* city, *town,* or village *board of canvassers,* as the case may be, shall file with the county clerk or with the city, town, or village clerk, as the case may be, a verified petition setting forth that he was a candidate for a specified office or that he voted upon any such constitutional amendment or proposition at said election, and that he is informed

and believes that a mistake or fraud has been committed in specified precincts in the counting and return of the votes cast for the office for which he was a candidate, or upon the matter voted upon, *or specifying any other defect, irregularity, or illegality in the conduct of said election,* said county, city, town, or village board of canvassers, as the case may be, shall reconvene on the day following the filing of such petition and proceed to ascertain and determine the facts alleged in said petition and make correction accordingly and recount the ballots in every precinct specified in accordance therewith." (Italics supplied.)

Sec. 6.66 (3), Stats. 1957, provides that within five days after the board of canvassers makes its final determination in the contest proceeding as prescribed in sec. 6.66 (1), Stats. 1957, any elector aggrieved thereby may appeal to the circuit court. In the instant case no elector residing in the affected territory filed any petition with the election inspectors, who constituted the board of canvassers, challenging the method of holding the election, the eligibility of any voter, or the count of the ballots by the canvassers.

Sec. 6.66, Stats., had its origin in ch. 328, Laws of 1911. As originally enacted, it provided a procedure whereby candidates for public office alone could contest the results of an election but had no application to referendum elections. It was not until the enactment of ch. 621, Laws of 1917, that the legislature made the contest procedure in sec. 6.66 applicable to referendum elections and available to electors voting therein. Therefore, the issue which now confronts this court for the first time,[1] namely, whether the contest

---

[1] The result of a referendum election was challenged collaterally in *State ex rel. Baxter v. Superior* (1929), 199 Wis. 358, 226 N. W. 383, by an attempt to frame a cause of action based on the theory that title to the office of mayor of the city of Superior was jeopardized. However, this court affirmed the trial court's sustaining of a demurrer to the complaint on the ground that it did not state a cause of action in *quo warranto* and could not state one for equitable relief to protect the right of a *de facto* officer to remain in possession of

procedure in sec. 6.66 is the exclusive remedy for challenging a referendum election, could not have arisen before 1917. The attorney general, however, has rendered an opinion, which is directly in point, in 49 Op. Atty. Gen. (1960), 32, based upon the following facts: An elector challenged the election result of an annexation referendum pursuant to sec. 6.66 (1) on the ground that two people who had voted therein were not qualified electors of the territory. The board of canvassers then met, conducted a hearing, and accepted proof by affidavit of the qualifications of the two challenged voters and of the way they voted. The canvassers then rejected these two votes and recertified the result of the election omitting these two votes. In his opinion the attorney general states (p. 34):

"Moreover, it appears to me that no appeal having been taken from the determination of the board of canvassers, as provided in sec. 6.66 (3), its determination is very probably final and not subject to review or collateral attack in any other action. It will be observed that sub. (4) above quoted provides that nothing in sec. 6.66 shall be construed to abrogate any right or remedy that any *candidate* may now have affecting the trying of title to office. This was no doubt intended to preserve the right of a candidate to a remedy by proceedings in the nature of *quo warranto*. See *State ex rel. Graves v. Wiegand* (1933), 212 Wis. 286, 249 N. W. 537.

"It is also true that formerly *quo warranto* or mandamus proceedings were available to test the outcome of a referendum *State ex rel. Hopkins v. Olin* . . . [(1868), 23 Wis. 309]. But it will be observed that in the *Hopkins Case*

---

the office until the *de jure* right of the adverse claimant could be judicially determined. Thus, although relator had alleged fraud in the conduct of the election, the result of the court's determination was to deny him equitable relief. A prior attempt to challenge the result of the election under the procedure outlined in sec. 6.66, Stats., had proved unsuccessful. *Baxter v. Sleeman* (1928), 196 Wis. 562, 221 N. W. 382.

the statute authorizing the referendum, ch. 148, Laws of 1866, contained no provision for a recount or for an appeal from the canvass of the votes. Now the legislature has provided a remedy by recount and appeal and has expressly said that it does not interfere with other remedies of *candidates,* but has deliberately omitted any similar statement with reference to *referenda.* Therefore, the general rule appears to be applicable that 'where a specified method of review is prescribed by an act . . . conferring a new power, the method so prescribed is exclusive and if review is sought that method must be pursued.' *Superior v. Committee on Water Pollution* (1953), 263 Wis. 23, 26, 27, 56 N. W. (2d) 501, and cases cited. Since the time for appeal has expired, the finding of the board of canvassers upon the recount proceeding is probably final and binding."

18 Am. Jur., Elections, p. 362, sec. 277, states that while courts are split on the question of whether statutory procedures for contesting elections are the exclusive remedy, the majority rule is that they are. An exception to this rule is also stated therein, namely, that the use of *quo warranto* proceedings is not precluded to the people in their sovereign capacity for inquiring into usurpations of office. We shall discuss this *quo warranto* exception later in this opinion. To hold that the remedy provided by sec. 6.66, Stats., is exclusive is in accord with the general rule that, where the law gives a new remedy, this remedy is exclusive. *Superior v. Committee on Water Pollution* (1953), 263 Wis. 23, 26, 27, 56 N. W. (2d) 501; *Baxter v. Sleeman* (1928), 196 Wis. 562, 564, 221 N. W. 382.

We consider the Idaho case of *Harrison v. Board of County Commissioners* (1948), 68 Idaho 463, 198 Pac. (2d) 1013, to be directly in point on this question of exclusiveness of remedy. Three individual plaintiffs instituted suit for a decree adjudging void a referendum election involving special county bonds. The grounds of attack were alleged irregularities both in the proceedings antedating the

election and also in the conduct of the election. With respect to the alleged irregularities in conducting the election, the court held that the action was not maintainable because Idaho had a statute which outlined a procedure for contesting such an election, which plaintiffs had not followed, and that this procedure was plaintiffs' exclusive remedy. The opinion distinguished an earlier Idaho case that had permitted a suit in equity to challenge a school-bond election on the ground that the legislature at that time had not yet provided a statutory remedy for contesting such an election. The court in discussing this aspect of the case stated (68 Idaho at p. 467):

"So far as these grounds are concerned, appellants cannot maintain this action since such matters could have been brought up by direct contest of the election *and the action to this extent partakes of a contest.*" (Emphasis supplied.)

We deem this last-quoted statement by the Idaho court to be particularly appropriate with respect to defendant city's attempt in the instant case to go behind the result of the referendum election as certified and filed by the board of canvassers.

Defendant city cites the following cases, *State ex rel. Field v. Saxton* (1860), 11 Wis. 25 (*27); *State ex rel. Gates v. Fetter* (1860), 12 Wis. 632 (*566); *State ex rel. Field v. Avery* (1861), 14 Wis. 132 (*122); and *State ex rel. Hopkins v. Olin* (1868), 23 Wis. 309, wherein mandamus was held the proper remedy to test the validity of referendum elections held on the issue of removal of a county seat. Although mandamus is a legal remedy, its issuance is largely controlled by equitable principles. 34 Am. Jur., Mandamus, p. 829, sec. 33. Mandamus may not be maintained if some other plain, adequate, and complete remedy exists. Id., p. 835, sec. 42. Since 1917 such a remedy with respect to referendum elections has been pro-

vided by the election-contest procedure specified in sec. 6.66, Stats. Therefore, as pointed out by the attorney general in 49 Op. Atty. Gen. (1960), 32, the above-cited cases have lost their efficacy as authorities that mandamus is a proper remedy for challenging the conduct of referendum elections.

Defendant city also relies upon the *quo warranto* cases brought in the name of the state to test the right of an occupant of public office to continue in such office. In those cases the courts hold that the official canvass of the election returns is not conclusive and admit evidence concerning the conduct of the election. Typical of such cases is *State ex rel. Graves v. Wiegand* (1933), 212 Wis. 286, 249 N. W. 537, which is cited by defendant city. Sec. 6.66 (4), Stats. 1957, however, provides: "Nothing in this section shall be construed to abrogate any right or remedy that any candidate may now have affecting the trying of title to office." It is significant that sec. 6.66 does not contain a similar exception preserving any remedy which allegedly existed for the purpose of challenging the result of referendum elections. Thus the canon of statutory construction, *"Expressio unius est exclusio alterius,"* affords a complete answer to defendant city's contention that these *quo warranto* cases are applicable to the issue of exclusiveness of remedy.

Sec. 294.04 (1) (a) and (2), Stats. 1957, specifically provides for maintenance of an action of *quo warranto* where there has been a usurpation of public office. Sec. 294.04 does not provide for maintenance of *quo warranto* to test the validity of an annexation proceeding. Thus the legislature has provided two remedies for inquiring into the title to public office dependent upon the outcome of an election. One is provided by sec. 6.66, and the other by sec. 294.04. California has also by statute provided for similar, alternative remedies in such a situation. Commenting on this, the California court in *Powers v. Hitchcock* (1900), 129 Cal. 325, 326, 327, 61 Pac. 1076, declared: "There are

two separate and distinct methods provided in the Code of Civil Procedure to test the title to an office. The first is by proceedings in the nature of *quo warranto* against any person who usurps or intrudes into a public office. (Code Civ. Proc. secs. 802–810.) . . . The second is by contesting the election as provided in the Code of Civil Procedure, sections 1111 to 1127." The court affirmed the trial court's sustaining of a demurrer to the complaint on the ground that no cause of action in *quo warranto* had been pleaded and the election-contest statutes had not been followed.

There is a historical reason why the legislature first provided the remedy of *quo warranto* for testing claims of usurpation of office and later preserved that remedy, by the proviso of sub. (4) of sec. 6.66, Stats., as an alternative to the remedy provided in sec. 6.66. This reason is fully explained in the memorable case of *Attorney General ex rel. Bashford v. Barstow* (1855), 4 Wis. 567 (*567), wherein the attorney general sought to oust defendant Barstow from the office of governor. Barstow had been certified by the board of canvassers as the winner of the office in the preceding election. The court held that the result of the official canvass was not conclusive on the court. The rationale of this holding is found in the following statement by Mr. Chief Justice WHITON (p. 826 (*793)), ". . . under our constitution and laws, it is the election to an office, and not the canvass of the votes, which determines the right to the office, . . ." See further another quotation from the same case set forth in *State ex rel. Graves v. Wiegand, supra,* at page 293. Mr. Chief Justice WHITON further pointed out in *Attorney General ex rel. Bashford v. Barstow, supra,* that where title to an office is being tried in a *quo warranto* proceeding, the people, as well as relator and respondent, are a party to the action. Thus a grave question of constitutionality would arise if the legislature were to make the election-contest procedure in sec. 6.66 the exclusive remedy in a

situation involving alleged usurpation of office, because sec. 6.66 permits only candidates and electors, and not the people in their sovereign capacity, to contest an election.

Nevertheless, no reasons of constitutionality preclude the legislature's making the election-contest procedure provided in sec. 6.66, Stats., the exclusive remedy in the instant situation. The legislature, in absence of any prohibition in the state constitution, may create municipal corporations and alter their boundaries at will. *In re Village of Chenequa* (1928), 197 Wis. 163, 166, 221 N. W. 856; *State ex rel. Zilisch v. Auer* (1928), 197 Wis. 284, 293, 294, 221 N. W. 860, 223 N. W. 123. By the enactment of sec. 66.021, Stats. 1957, the legislature has made action by electors in the affected territory a condition precedent to the right of a city to annex such territory. The necessary action may take the form of (1) a majority signing a petition for annexation, where the method pursued is that of "direct annexation" pursuant to sub. (2) (a) of sec. 66.021, Stats. 1957, or (2) a majority voting in favor of annexation at a referendum election, where the method pursued is that of "annexation by referendum" pursuant to sub. (2) (b) of this same statute. The legislature, in the case of a direct annexation, has not given the city any control over the signing and filing of a petition by the electors in the affected territory. The legislature could likewise exclude the city from challenging the result of a referendum election under sec. 6.66 and give that right solely to the electors within the affected territory. We deem this exactly what the legislature has done.

We can perceive no reason why the courts should fashion a remedy in equity to permit the city to challenge the result of the instant referendum election as certified by the board of canvassers. This is because the residents in the affected area are the real parties interested in any proposed alteration of the area's boundaries. *Schatzman v. Greenfield* (1956), 273 Wis. 277, 280, 77 N. W. (2d) 511; *Town of*

*Madison v. City of Madison* (1955), 269 Wis. 609, 614, 70 N. W. (2d) 249. When the annexation method pursued is that of "annexation by referendum," the city acquires no right to adopt the annexation ordinance until the board of canvassers has certified that the majority of the electors voted in favor of annexation.

Defendant city advances a further reason why the election-contest procedure provided by sec. 6.66, Stats., cannot be the exclusive remedy for attacking the referendum election. This reason is that certain provisions in sub. (3) of sec. 6.66, concerning the procedure in circuit court in case of an appeal, make the statute, as interpreted, unconstitutional. The particular provisions attacked provide: "A reference may be ordered upon any or all questions. At the time and place so fixed the matter shall be summarily heard and determined and the costs taxed as in other civil actions." Defendant city urges that these provisions contravene the following provisions of the Wisconsin constitution:

Sec. 5, art. I: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. . . ."

Sec. 19, art. VII: "The testimony in causes in equity shall be taken in like manner as in cases at law, and the office of master in chancery is hereby prohibited."

The right to trial by jury preserved by the constitution is the right as it existed at the time of the adoption of the constitution in 1848. *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 89, 102 N. W. (2d) 393. No right to jury trial existed in an election contest at the time the constitution was adopted. If a remedy then existed, it was obtained by using writs of *quo warranto* or mandamus or by proceeding in equity; none of these proceedings required a jury trial. The general rule elsewhere under provisions of state constitutions with wording similar to that of sec.

5, art. I, Wis. Const., is that there is no right to a jury trial of an election contest. *Ashley v. Wait* (1917), 228 Mass. 63, 116 N. E. 961, 8 A. L. R. 1463; *McMaster v. Wilkinson* (1944), 145 Neb. 39, 15 N. W. (2d) 348, 155 A. L. R. 667; 18 Am. Jur., Elections, p. 381, sec. 314.

There is a serious question whether the provision of sub. (3) of sec. 6.66, Stats., authorizing the circuit court to order a reference, violates sec. 19, art. VII, Wis. Const., under the holding of this court in *Killingstad v. Meigs* (1911), 147 Wis. 511, 133 N. W. 632. Even if this provision was held invalid, however, the other provisions of sec. 6.66 would not necessarily be invalidated. The test of whether an entire act or statute is invalidated because of the unconstitutionality of a part thereof was stated in *State ex rel. Wisconsin Telephone Co. v. Henry* (1935), 218 Wis. 302, 316, 260 N. W. 486, 99 A. L. R. 1267, as follows:

"It is well established that the elimination of even material provisions in an act as enacted, because of the invalidity of such provisions, does not render the remaining valid provisions thereof ineffective, if the part upheld constitutes, independently of the invalid portion, a complete law in some reasonable aspect, unless it appears from the act itself that the legislature intended it to be effective only as an entirety and would not have enacted the valid part alone."

See also *State ex rel. Broughton v. Zimmerman* (1952), 261 Wis. 398, 409, 52 N. W. (2d) 903. Under the foregoing test, sec. 6.66, Stats., would be a complete law without the provision for a reference. Furthermore we are satisfied that the legislature did not intend sec. 6.66 to be effective only as an entirety, but would have enacted the remainder of the section even if it had known that the reference provision was invalid.

We conclude that sec. 6.66, Stats., provides the exclusive remedy for contesting the result of the referendum election in the instant case.

*Failure of Canvassers to Verify Their Certification by Affidavit.*

Sub. (5) (e) of sec. 66.021, Stats. 1957, provides:

"Canvass; statement to be filed. The election inspectors shall make a statement of the holding of the election showing the whole number of votes cast, and the number cast for and against annexation, attach thereto their affidavit and immediately file it in the office of the town clerk. They shall file a certified statement of the results in the office of the clerk of each other municipality affected."

The election inspectors who constituted the board of canvassers complied with the above-specified requirements in all respects except that the statement of the election result had no affidavit attached thereto. It will be noted that the statute requires that the affidavit be attached to the statement filed with the town clerk alone and not to the certified statement filed with the city clerk. The statutes fail to say what the missing affidavit must recite. The election inspectors would have complied with the statute in our opinion had they merely attached an affidavit to the statement of election result which verified the truth of that statement.

Defendant city contends that the absence of the affidavit renders the election-contest procedure of sec. 6.66, Stats., inapplicable and that, therefore, the circuit court properly admitted evidence going behind the result certified by the election inspectors. We deem it significant that the right given to electors under sec. 6.66 (3) to contest the result of the referendum election is not made dependent upon the board of canvassers' filing their statement of the election result with the town clerk. On the contrary the three-day period allotted for instituting the contest commences to run from "the last meeting of the . . . town . . . board of

canvassers." [2] The referendum election was held on September 15, 1959, and the certified statements of the result, which were filed with the town clerk and city clerk the following day, also bear date of September 15, 1959. Thus the date of last meeting of the canvassers occurred on September 15, 1959, and any elector of the territory who had voted in the election could have instituted a contest within the ensuing three-day period. Moreover, the omitted act, involving the executing of the affidavit and attaching of same to the statement filed with the town clerk, was a ministerial act which any interested elector might have compelled by mandamus.

Since we have determined that sec. 6.66, Stats. 1957, provided the exclusive method of challenging the election result and since the time for use of this remedy expired even before the city council adopted the annexation ordinance in question, defendant city cannot assert in this litigation that the canvassers' failure to file the affidavit vitiated the certified statement of the canvassers which was filed with the city clerk. Because the statute did not require that such an affidavit be attached to this certified statement to be filed with the city clerk and because the city council had to rely on this certified statement alone in determining whether a majority of the electors voting in the referendum election voted in favor of annexation, we are inclined to think its introduction in evidence was conclusive on the issue of the election result. In any event, since the purpose of attaching

[2] When sec. 6.66, Stats., was amended by ch. 621, Laws of 1917, to provide a new statutory procedure for contesting referendum elections and to make this new remedy available to electors, they were allotted ten days *"after the result of such election is declared"* within which to institute a contest. (Italics supplied.) Ch. 445, Laws of 1927, amended this provision so as to change the ten days to *three days.* A significant amendment was made by ch. 349, Laws of 1957, whereby the commencement of the period for contest was changed from "after the result of such election is declared" to "after the last meeting of the . . . town . . . board of canvassers."

the affidavit to the statement filed with the town clerk is only to verify the truth of the certified result of the election, the further evidence admitted by the trial court should have been restricted to verifying the count of the ballots cast. It is undisputed that the canvassers correctly reported that 19 votes had been cast in favor of annexation and 19 against.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment as prayed for in plaintiffs' complaint.

WILKIE, J., took no part.

The following opinion was filed January 10, 1963:

PER CURIAM (*on motion for rehearing*). Respondent's brief in support of its motion for rehearing argues 13 propositions, most of which the court has already considered and decided adversely to respondent. In three instances, however, respondent has brought to our attention inaccuracies which we gladly correct.

(1) In stating the facts, we said the method of annexation followed was "annexation by referendum" under sec. 66.021 (2) (b), Stats. 1957. In fact the method was "direct annexation" under paragraph (a) of the same subsection. The referendum was conducted as provided in sub. (5).

(2) Respondent challenges our reference to a "general rule that, where the law gives a new remedy, this remedy is exclusive." A more-apt statement is found in *Baxter v. Sleeman:* [1] ". . . where the law gives a new remedy to meet a new situation, the remedy provided by the law is exclusive, . . ." [2]

---

[1] (1928), 196 Wis. 562, 564, 221 N. W. 382.

[2] See *Morgan v. South Milwaukee Lake View Co.* (1898), 100 Wis. 465, 466, 76 N. W. 354, *State ex rel. Martin v. Juneau*

Here, as pointed out in the opinion of the attorney general, cited in our opinion, there is language in the statute implying that the recount remedy was substituted for other remedies with respect to referenda.

(3) We stated that at the time of the adoption of the constitution there was no right to a jury trial in *quo warranto* trying title to an office. This assertion appears to have been erroneous.[3]

The original opinion is modified so as to be in accord with the preceding statements. The result is unchanged. An annexation is subject to ascertainment of the choice of the majority. The announced results of this referendum showed annexation losing by a tie vote. It seems entirely reasonable to treat the canvassers' determination as conclusive unless timely challenged by a participating voter.

The motion for rehearing is denied, without costs.

(1941), 238 Wis. 564, 568, 300 N. W. 187, and 3 Sutherland, Statutory Construction (3d ed.), pp. 325–327, sec. 6802.

[3] *State ex rel. Schumacher v. Markham* (1915), 160 Wis. 431, 437, 152 N. W. 161. See *State ex rel. Attorney General v. Messmore* (1861), 14 Wis. 125 (*115), and *State ex rel. Leonard v. Rosenthal* (1905), 123 Wis. 442, 102 N. W. 49.